# IN THE COURT OF APPEALS OF IOWA

No. 23-0082
Filed April 23, 2025

**GARY WAYNE ELLIOTT,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

Appeal from the Iowa District Court for Poweshiek County, Lucy J. Gamon, Judge.

An applicant appeals the denial of postconviction relief from his four second-degree sexual abuse convictions. **AFFIRMED.**

Ryan J. Mitchell of Orsborn, Mitchell & Goedken, P.C., Ottumwa, for appellant.

Brenna Bird, Attorney General, and Joseph D. Ferrentino, Assistant Attorney General, for appellee State.

Considered without oral argument by Greer, P.J., Sandy, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**VOGEL, Senior Judge.**

A jury convicted Gary Elliott of four counts of second-degree sexual abuse. After direct appeal, he applied for postconviction relief (PCR), arguing his trial counsel provided ineffective assistance in four respects and that newly discovered evidence entitled him to new trial. The district court denied his application and he now appeals. On our review, we agree Elliott has not shown his counsel was ineffective, nor has he shown he would have prevailed on his claim of purportedly newly discovered evidence. Thus, we affirm dismissal of his application.

## I.        Factual Background and Proceedings.

When H.E. was seven years old, she was fostered by Elliott and his wife. After living with the Elliotts for three years, H.E. was adopted into their family. In the summer of 2012, when H.E. was eleven, the family decided to move from Indiana to Iowa. As part of the transition, Elliott and H.E. first moved out to Iowa together, so she could begin middle school and the two of them could make repairs to the new home. The rest of the family planned to join them in the fall. While they were living alone, Elliott began abusing H.E. The criminal record includes graphic details of the abuse as described by H.E., which we will not replicate here.

H.E. did not report the abuse for two years, but then finally wrote a letter to her adoptive mother, Elliott's wife, when she was thirteen. The mother did not believe her. A few years later, H.E.'s report made its way to the Iowa Department of Health and Human Services, who referred the case to local law enforcement. During the investigation, H.E. gave a child protection center interview where she again recounted the abuse, while Elliott denied any sexual contact.

Elliott was charged with four counts of second-degree sexual abuse, in violation of Iowa Code sections 709.1, 709.3(1)(b) (2012). After a four-day trial, a jury found him guilty as charged. He was sentenced to twenty-five years in prison. We affirmed his convictions and declined to address his ineffective-assistance claims on direct appeal, reserving them for PCR proceedings. *See State v. Elliott*, No. 18-0526, 2019 WL 1300333, at *3–5 (Iowa Ct. App. Mar. 20, 2019).

Elliott later applied for PCR, alleging his trial counsel performed incompetently in four ways: (1) failing to introduce evidence about H.E.'s past sexual abuse, (2) failing to object to the prosecutor's closing argument, (3) failing to introduce evidence obtained by a private investigator, and (4) failing to argue to the jury that Elliott cooperated and assisted with law enforcement's investigation. He also asserted that newly discovered evidence from H.E.'s brother warrants a new trial. After a hearing, which included testimony by Elliott, the district court denied the application, finding Elliott failed to prove his trial counsel provided ineffective assistance or that any purported newly discovered evidence would have changed the result of the trial. Elliott now appeals.

## II.     Ineffective Assistance of Counsel.

Criminal defendants are constitutionally entitled to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). If a convicted defendant believes he received deficient representation, our statutory PCR scheme allows him to apply for relief. *See* Iowa Code § 822.2(1)(a). To obtain relief, the applicant must show "both that counsel breached an essential duty and that constitutional prejudice resulted." *Smith v. State*, 7 N.W.3d 723, 726 (Iowa

2024). Because ineffective-assistance claims implicate a defendant's constitutional rights, our review is de novo. *Id.* at 725.

Elliott carries a heavy burden to prove ineffective assistance. We presume his trial counsel performed competently, and he must overcome that presumption by showing "that counsel's performance was so deficient as to not constitute functioning as 'counsel.'" *Osborn v. State*, 573 N.W.2d 917, 922 (Iowa 1998) (citation omitted). Allegations that do not surpass "improvident strategy, miscalculated tactics, or mistakes in judgment" are generally not enough. *Id.* Moreover, even if counsel breaches an essential duty, Elliott must still show that counsel's breach prejudiced him. *Ledezma v. State*, 626 N.W.2d 134, 143 (Iowa 2001). To that end, he must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (citation omitted). Because his criminal case went to trial, Elliott must therefore prove "the reasonable probability of a different verdict, or that the fact finder would have possessed reasonable doubt." *Id.* at 144. We consider each claim in turn.

### A. Evidence Relating to Prior Abuse.

In the lead-up to trial, the State sought to exclude evidence relating to H.E.'s prior sexual abuse at the hands of a relative, citing Iowa's rape-shield rule. *See* Iowa R. Evid. 5.412. Elliott's counsel argued that the evidence was highly probative of H.E.'s credibility, asserting the jury should be allowed to weigh how H.E. responded to a prior founded instance of abuse compared to her conduct after she accused Elliott. The court agreed with the State, finding prior instances of sexual abuse fell within the rule's prohibition. During trial, counsel tried again to

admit the evidence and the court again excluded it, specifically opining that counsel's credibility theory did not satisfy the rape-shield rule's constitutional exception. *See id.* r. 5.412(b)(1)(C). The court's exclusion was affirmed on appeal, where we similarly found that Elliott's desired use of H.E.'s past sexual abuse was not so probative that the constitutional exception required the evidence come in. *See Elliott*, 2019 WL 1300333, at *3–4.

In this PCR action, Elliott faults trial counsel for not specifically advocating for the rape-shield-rule's constitutional exception. However, we agree with the PCR court that this issue was raised and litigated during Elliott's criminal proceeding, including on direct appeal. Elliott provides no new theory for satisfying the exception that was overlooked by counsel—he merely continues to argue that the excluded evidence was probative of H.E.'s credibility because the jury could have weighed H.E.'s reaction to prior abuse (when she was six years old) to the later abuse by Elliott (when she was eleven years old). *But see State v. Jones*, 490 N.W.2d 787 (Iowa 1992) (declining to apply constitutional exception when desired evidence was only marginally relevant). Because Elliott's constitutional-relevance argument was finally adjudicated on direct appeal, it cannot serve as a basis for PCR. *See* Iowa Code § 822.8; *State v. Wetzel*, 192 N.W.2d 762, 764 (Iowa 1971). Accordingly, this claim was appropriately dismissed.

## B.     Failing to Object to Prosecutor's Closing Argument.

During the criminal trial, one of Elliott's defenses was the lack of other allegations of abuse—he previously ran a daycare and was approved to be a foster parent, and neither would have been possible had other children accused him of abuse. To rebut this defense, the prosecutor questioned the Department social

worker about whether a lack of reports necessarily indicates a lack of abuse. The social worker testified that no reports only "means that abuse was not reported." During closing arguments, the prosecutor renewed this argument to the jury:

> Who is Gary Elliott? Who is this defendant? He's a man of opportunity. He is a man who has designed his entire life to be able to have access to children. That's who Gary Elliott is. He ran a daycare in his home. He helped run a childcare facility. He was a foster parent. . . . Now, [his wife] wants us to know and is confirmed by [the social worker], who checked the records, that there were no reports of sexual abuse while Gary was involved in those certain aspects of children's lives in Indiana. However, we also know that crimes involving sexual abuse don't always get reported right away, if at all, and that if those crimes aren't reported, then there is no way that those licensing and investigative agencies in Indiana would know about those crimes. Man of opportunity.

Elliott now faults his trial counsel for not objecting to this argument, which he believes improperly paints him as a "serial child molester." The PCR court found counsel had no duty to object, as the prosecutor's statements referenced admitted evidence, fairly made inferences from that evidence, and never squarely accused Elliott of abusing other children. We agree. Further, even if Elliott could show a breach, he only offers a conclusory statement in support of prejudice— arguing "had criminal trial counsel object to the above prejudicial remarks, reasonable probability exists that the result of the criminal trial would have been different." Bare allegations of prejudice alone are not enough to carry his burden. *See State v. Myers*, 653 N.W.2d 574, 579 (Iowa 2002). Without more, Elliott has not shown he is entitled to relief.

### C. Failing to Offer Evidence from a Private Investigator.

Next, Elliott testified during the PCR hearing that, while charges were pending, he hired a private investigator to look into both himself and H.E. That

investigator compiled a report, which Elliott gave to his trial counsel. Yet, according to Elliott, the investigator died shortly after finishing the report, Elliott's copy was lost in a fire, and he could not recall the investigator's name. Still, Elliott insists it was "a very good report" and his trial counsel should have used it. The PCR court dismissed this claim as frivolous, reasoning Elliott failed to prove the contents of the report, who would have testified, or why their testimony would have been beneficial.

Without any information about the report's contents, we cannot gauge whether it would have been admissible, let alone assess whether its exclusion harmed Elliott's defense. *See Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994) (declining relief when applicant did "not suggest what [the desired] testimony would have been or how it would have supported his" case). Thus we agree with the PCR court's dismissal of this claim as frivolous.

**D.     Failing to Emphasize Elliott's Cooperation with the Investigation.**

Elliott also specifically faults his trial counsel for not highlighting that Elliott consented to H.E. being interviewed during the investigation, which he believes indicates his innocence. Yet, as the PCR court noted, Elliott "never mentioned this claim" during his PCR testimony, nor was it explained in the PCR "brief or closing argument." Moreover, the court did "not accept [Elliott's] premise that if indeed he 'allowed' [H.E.] to speak with various investigators, that such permission would be inconsistent with his guilt." The court therefore dismissed the claim as frivolous, finding Elliott failed to "assert even a prima face case of ineffective assistance of counsel."

Elliott's claim fares no better on appeal. He insists the jury would have acquitted him had trial counsel emphasized that he allowed H.E. "to speak about the abuse allegations," as that fact would have shed light on his "behavior and reaction to the allegation." We are unconvinced. For starters, the daughter had already reported her abuse to the mother before speaking to law enforcement, which shows she was eager for help and willing to speak about her abuse without prior permission from Elliott. To the extent that Elliott believes stressing his "allowance" would have been persuasive to the jury, allegations of improvident strategy are not enough to show counsel breached any duty. *Osborn*, 573 N.W.2d at 922. Nor does Elliott explain why "allowing" H.E. to speak about her abuse is so probative that had counsel stressed this point, the jury would not have convicted him. Far from showing prejudice, Elliott identifies, at best, one more detail for the jury to weigh alongside the balance of testimony heard at trial, including compelling testimony from H.E. Again, we agree with the PCR court's dismissal of this claim as frivolous.

### III. Newly Discovered Evidence.

Finally, Elliott argues newly discovered evidence warrants a new trial. *See Jones v. State*, 479 N.W.2d 265, 274 (Iowa 1991) (allowing relief when evidence discovered after the verdict, that could not have been discovered sooner, is material to the case and would probably change the outcome). We review newly-discovered-evidence claims for correction of errors at law. *More v. State*, 880 N.W.2d 487, 499 (Iowa 2016).

During the PCR hearing, Elliott testified that, at some point, his son told a therapist that H.E.'s allegations were "made up." The PCR court rejected this claim as frivolous, explaining

> Elliott's testimony regarding [the son's] purported new statements is entirely self-serving. He did not call [the son] to testify. He did provide any affidavit, record, or other evidence from [the son] or anyone who has talked to [the son] about this issue. He did not provide any sort of chronology which would indicate that this "evidence" is even newly discovered, and was not available at the time of trial. Assuming [the son] would proffer the testimony asserted by Mr. Elliott, such testimony would be mere impeachment of the testimony of [H.E.], and would be very unlikely to have changed the result at trial.

We agree. New evidence that would merely be impeaching is "not considered material in the context of a newly-discovered-evidence claim." *Moon v. State*, 911 N.W.2d 137, 152–53 (Iowa 2018). With nothing to support his claim of newly discovered evidence, the PCR court properly dismissed this claim as frivolous.

## IV.    Conclusion.

Finding no merit in Elliott's ineffective-assistance claims and that his assertion of newly discovered evidence is frivolous, we affirm denial of Elliott's PCR application.

**AFFIRMED.**